UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARON JONES CHUNG,<br><br>    Plaintiff,<br><br>-against-<br><br>HONOR EMERGENCY FUND OF THE FIRE DEPARTMENT OF THE CITY OF NEW YORK,<br><br>    Defendant. | **MEMORANDUM AND ORDER**<br><br>23-cv-05716 (LDH) (CLP) |

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Sharon Jones Chung ("Plaintiff"), proceeding pro se, brings the instant action against Honor Emergency Fund of the Fire Department of the City of New York ("Defendant") pursuant to 42 U.S.C. §§ 1981 and 1983, alleging discrimination, wrongful termination, and retaliation. Defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims for failure to state a claim.

## BACKGROUND[1]

Defendant Honor Emergency Fund of the Fire Department of the City of New York ("HEF") is a not-for-profit organization that provides grants for medical and counseling services and financial aid to active and retired firefighters, active civilian employees of the Fire Department of the City of New York ("FDNY"), members of the emergency medical service,

---

[1] The following facts are taken from the Second Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

1

and their families. (Second Am. Compl. ("Compl.") at 9, ¶ 26[2], ECF No. 25-1.) Plaintiff worked for Defendant from September 2009 to February 2021. (*Id.* at 7, ¶ 15.) Initially, Plaintiff was hired to work as an executive assistant. (*Id.* at 7, ¶ 14.) In October 2017, Plaintiff attained the title of Program Coordinator. (*Id.* at 7–8, ¶ 19.) From September 2009 to February 2021, Defendant employed two other individuals: Stanley Reimer, Executive Director and Plaintiff's supervisor, and Honey Berk, who worked as an accountant for Defendant. (*Id.* at 7, ¶ 15.) Plaintiff identifies as a Black woman. (*Id.*) According to the complaint, both Reimer and Berk are white. (*Id.*)

In May 2019, a grant applicant asked Plaintiff to give Reimer an envelope that contained cash. (*Id.* at 70, ¶ 2.) Because Plaintiff was not aware of any repayment arrangement with the grant applicant, she reported the cash payment to the Treasurer of HEF's Board of Trustees. (*Id.* at 70, ¶¶ 2–3.) Plaintiff claims that after she reported the May 2019 incident, Reimer began retaliating against her by micromanaging her work. (*Id.* at 27.) Plaintiff further alleges that an unidentified trustee yelled at her when she tried to speak during a December 3, 2019 meeting, having been "influenced by negative information . . . that [Reimer] reported [about her] to the Board." (*Id.* at 24–25, ¶ 6.)

On or around March 22, 2020, Defendant began to comply with the New York State on Pause Executive Order, which directed non-essential businesses to suspend in-office personnel

---

[2] Because the numbering of the paragraphs in the Second Amended Complaint restarts with each section, each paragraph reference also includes a page number. The page numbers referred to are the ECF page numbers, rather than the page numbers used in the document.

2

functions.³ (*Id.* at 3, ¶ 2.) On March 27, 2020, Reimer denied Plaintiff's request for approval to work remotely and remotely access Defendant's shared drive. (*Id.* at 32–33, ¶ 4.) Reimer subsequently approved the requests on March 30, 2020. (*Id.* at 34, ¶ 4.) On March 31, 2020, Plaintiff emailed Berk explaining that Reimer's delay in approving her remote access to the shared drive delayed her ability to process vouchers. (*Id.*) In an April 3, 2020 email to Plaintiff, Reimer stated that Plaintiff's email to Berk was inappropriate and unprofessional. (*Id.* at 33, ¶ 4.)

On May 27, 2020, Plaintiff emailed Fire Commission Chairperson Nigro, reporting discrimination and retaliation. (*Id.* at 24, ¶ 4.) Plaintiff alleged that Defendant's pension plan was changed in 2014 for the sole benefit of Reimer, who served as the plan's administrator. (*Id.* at 26, ¶ 6.) Plaintiff also alleged that she received a different pension benefit than disbursed to Reimer and the white employee she replaced, Terri B. (*Id.* at 90, ¶ 1.) Plaintiff further alleged that her lump sum pension distribution was significantly lower than that distributed to Terri B. (*Id*. at 91, ¶ 5.) As to health benefits, Plaintiff alleged that Defendant refused to increase her health insurance benefit to include spousal coverage, although Reimer's health insurance covered his family. (*Id.* at 99, ¶¶ 1, 5.) Finally, Plaintiff alleged that Defendant's vacation policy, pursuant to which Reimer and two HEF board members had to approve Plaintiff's vacation schedule, constituted unreasonable micromanagement. (*Id.* at 103, ¶ 7.)

On June 22, 2020, Plaintiff submitted a complaint to Defendant's Board Chairperson William Norden alleging that Reimer had retaliated against her. (*See id.* at 32, ¶ 2.) Plaintiff

---

³ On March 22, 2020, Governor Cuomo issued a directive, the New York State on Pause Executive Order, that all non-essential businesses statewide must close in-office personnel functions effective 8:00 p.m. on Sunday March 22, 2020, to mitigate the spread of COVID-19. *See* "Governor Cuomo Signs the 'New York State on PAUSE' Executive Order," N.Y.S. Governor, https://www.governor.ny.gov/news/governor-cuomo-signs-new-york-state-pause-executive-order (last visited February 10, 2025).

3

attached to the complaint the March 27, 2020 correspondence in which Reimer declined Plaintiff's request for remote shared drive access, (*id.* at 32, ¶ 4); the April 3, 2020 email in which Reimer stated that Plaintiff's email to Berk regarding Reimer's delay in approving remote access was inappropriate, (*id.* at 33, ¶ 4); and a January 28, 2020 exchange in which Plaintiff complained that Reimer had revised her earlier emails within a chain, (*id*. at 35).  On August 17, 2020, Defendant's counsel, Seyfarth Shaw LLC, notified Plaintiff that it had retained another law firm, Pechman Law Group PLLC ("Pechman"), to investigate Plaintiff's complaint.  (*Id.* at 37, ¶¶ 9–10.)  On November 17, 2020, Pechman issued a report detailing its investigation and finding that there was no evidence to suggest that Reimer had retaliated against Plaintiff.  (*Id.* at 47, ¶¶ 10–11.)

On January 6, 2021, Plaintiff received a disciplinary notice regarding purported insubordination, resistance to supervision, unwillingness to compromise, and inappropriate conduct.  (*Id.* at 10, ¶ 2; 87, ¶¶ 6–12.)  On January 25, 2021, Plaintiff wrote a letter of appeal to the January 6, 2021 notice.  (*Id.* at 88, ¶ 1.)  Defendant terminated Plaintiff's employment on February 10, 2021.  (*Id.* at 89, ¶ 1.)

On February 7, 2022, Plaintiff filed a charge with the New York State Division of Human Rights ("NYSDHR"), alleging that Defendant engaged in unlawful discriminatory practices relating to employment, because of her race and because she opposed discrimination and retaliation.  (Decl. of Michelle L. Vizzi in Supp. of Mot. to Dismiss ("Vizzi Decl."), Ex. B, NYSDHR Determination and Order After Investigation ("NYSDHR Determination") at 124, ECF No. 44.)  On March 27, 2023, the NYSDHR dismissed the charge, finding that "there is no probable cause to believe that [Defendant] ha[d] engaged in or [wa]s engaging in the unlawful discriminatory practice complained of."  (*Id.*)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). In reviewing a pro se complaint, however, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

## DISCUSSION

"The doctrine of claim preclusion, or res judicata, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). "In applying the doctrine of res judicata, [a court] must keep in mind that

5

a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  It is well settled that a court may dismiss a claim, including one brought by a pro se plaintiff, for failure to state a claim on res judicata grounds.  *See Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994) ("Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6).)" (citations omitted)); *see also MacKinnon v. City of New York/Hum. Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) ("We have regularly upheld a district court's authority to dismiss . . . a pro se complaint on res judicata grounds.") (citation omitted).  That is, although pro se submissions are held to less stringent standards than formal pleadings drafted by lawyers, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Fogel v. Sec'y of Air Force*, 351 F. Supp. 2d 47, 49 (E.D.N.Y. 2005), *aff'd*, 177 F. App'x 200 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)) (internal quotation marks omitted).  Hence, the doctrine of res judicata is equally applicable to pro se plaintiffs.  *See id.* (dismissing pro se complaint as barred by res judicata).  In this case, Defendant argues that Plaintiff's claims are barred by the doctrine of res judicata because the NYSDHR has already considered and issued a no probable cause determination as to those claims.  (Mem. L. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 150–52, ECF No. 44.)  The Court agrees.

New York courts have adopted a "transactional analysis approach" to res judicata issues. *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981).  Under this approach, "a claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping,' even if the later claim is brought under

a different legal theory of recovery." *Kirkland v. City of Peekskill*, 828 F.2d 104, 110 (2d Cir. 1987) (citations and internal quotation marks omitted). Furthermore, New York courts give "conclusive effect to the quasi-judicial determinations of administrative agencies . . . when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 489 (N.Y. 1984) (citations omitted). As relevant here, the NYSDHR has the authority to adjudicate and issue binding determinations regarding employment discrimination disputes. *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 734 (2d Cir. 2001). Accordingly, federal courts have afforded a preclusive effect to the NYSDHR's no probable cause determinations when federal and state claims arise from the same facts and involve the same parties. *See Kirkland*, 828 F.2d at 110 (dismissing plaintiff's federal claims alleging employment discrimination as precluded by the NYSDHR's no probable cause determination); *Vargas v. City of New York*, No. 01-CV-7093, 2008 WL 361090, at *2, 5 (S.D.N.Y. Feb. 7, 2008) (holding that employment discrimination claims were precluded by the NYSDHR's no probable cause determination).

Here, Plaintiff's claims involve the same parties implicated in the February 7, 2022 charge that she filed with the NYSDHR—herself and HEF. *See* NYSDHR Determination at 124. And Plaintiff's claims in this action arise from the same facts that she presented to the NYSDHR. (*See* Def.'s Mem at 151.) Indeed, there, as here, Plaintiff alleged that "Respondent [HEF] discriminated against her by: 1) denying her pension funds in March 2019, 2) implementing a vacation policy effective January 1, 2020, that gave improper discretion to the Board, 3) denying health insurance benefits for her husband in December 2019, and 4) terminating her on February 10, 2021, for alleged performance reasons." *Compare* NYSDHR

7

Determination at 124–25 *with* Compl. at 90, ¶¶ 2–3 (alleging termination of pension benefits in March 2019), 103, ¶ 7 (alleging vacation policy that constituted "unreasonable micromanagement"); 99–100, ¶¶ 1–9 (alleging denial of spousal healthcare coverage); and 89, ¶¶ 1–6 (alleging unlawful termination). On March 27, 2023, the NYSDHR issued a letter stating that it had considered Plaintiff's allegations and found "no probable cause to believe that [Defendant] ha[d] engaged in . . . [the conduct] complained of." (NYSDHR Determination at 124.) That determination must be given preclusive effect here. Accordingly, Plaintiff's claims in this action are barred. *Kirkland*, 828 F.2d at 110 ("[A] claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same 'factual grouping.'" (citations omitted))

Notwithstanding the seemingly clear authority on this issue, Plaintiff presses that res judicata does apply. In opposition, Plaintiff argues that the NYSDHR's determination does not preclude her claims in this case because the Equal Employment Opportunity Commission ("EEOC") subsequently issued a Notice of Right to Sue. (Pl.'s Mem. L. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 27, ECF No. 45.) Not so. Plaintiff does not, nor could she, point to a single case to support her notion that the issuance of a right to sue letter undermines the preclusive effect of a no probable cause determination by the NYSDHR. Simply put, the issuance of a right to sue letter has no bearing on the preclusive effect of an NYSDHR no probable cause determination. *See Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 183 (E.D.N.Y. 2006) (finding that an NYSDHR no probable cause determination barred the plaintiff's race discrimination and unlawful retaliation claims, even where the EEOC subsequently issued a right to sue letter); *Davis v. Metro N. Commuter R.R.*, No. 21-CV-387, 2022 WL 2223018 (S.D.N.Y. June 21, 2022) (same).

8

Plaintiff also argues that res judicata cannot apply to any claims that the agency determined were time-barred and therefore declined to consider. (Pl.'s Opp'n at 26.) This argument, too, is unavailing. "The doctrine of claim preclusion . . . bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup*, 776 F.3d 126, 128 n.1 (citing *Federated*, 452 U.S. at 398). Plaintiff acknowledges that the allegations she raises before this Court, including of conduct that occurred more than one year before she filed her NYSDHR complaint on February 7, 2022, were raised before the NYSDHR. (*See* Pl.'s Opp'n at 26–27.) That the NYSDHR determined that claims arising from alleged actions that occurred before February 7, 2021, fell outside of the agency's one-year limitation period does nothing to undermine the application of res judicata in this case. Indeed, "[u]nder New York law, a dismissal of an action as time-barred is considered to be on the merits for res judicata purposes." *Baird v. Kingsboro Psychiatric Ctr.*, No. 11-CV-159, 2013 WL 5774288, at *3 (E.D.N.Y. Oct. 24, 2013) (citing *Nostrum v. Cnty. of Suffolk*, 954 N.Y.S.2d 611, 613 (2d Dep't 2012)). Thus, Plaintiff fails to undermine the preclusive effect of the NYSDHR's no probable cause determination as to all of her claims.[4]

---

[4] Plaintiff also argues that NYSDHR's no probable cause determination has no preclusive effect because the agency's determination was "unsupported by the evidence and arbitrary." (Pl.'s Opp'n at 26.) Plaintiff seems to misapprehend the doctrine of res judicata, which "bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup*, 776 F.3d at 128 n.1 (citing *Federated*, 452 U.S. at 398). Whether Plaintiff believes that the agency's determination was well-supported is not germane to the Court's analysis of the application of res judicata. And in any event, such an argument is not properly before this court. After the NYSDHR decides the claim, a litigant may only appeal that decision to the Supreme Court of the State of New York. *Moodie v. Fed. Rsrv. Bank of New York*, 58 F.3d 879, 880, 882 (2d Cir. 1995) (citing N.Y. Exec. Law § 297). Accordingly, this argument, too, fails to refute Defendant's argument that the NYSDHR's determination bars Plaintiff's claims in the instant case.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2025

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge